OPINION
{¶ 1} Appellant, Joseph P. Moore, appeals the judgment entered by the Lake County Court of Common Pleas. Moore was sentenced to an aggregate prison term of 41 years for his convictions on one count of engaging in a pattern of corrupt activity and 100 counts of burglary.
 {¶ 2} Police officers in Northeast Ohio noticed an increase of burglaries in Lorain, Lake, Geauga, Summit, and Medina Counties. The break-ins had several things *Page 2 
in common. For example, the suspect generally entered the homes through a sliding glass door, and the suspect would often unplug the garage door opener in an effort to avoid being caught if the homeowner came home. The break-ins normally occurred in the evening hours, when no one was home. The suspect generally took small items, such as jewelry and digital cameras. Finally, a pillow case was often missing from the master bedroom.
 {¶ 3} In December 2006, a home was burglarized in Amherst, Ohio. Among the stolen items from this residence were two tickets to a Disney on Ice show at Quicken Loans Arena in Cleveland, Ohio. Detective John Balog of the Amherst Police Department investigated the incident. He went to Quicken Loans Arena on January 18, 2008, the night of the Disney on Ice show, and met with Cleveland police officers and arena security officials. During the show, two adults and a small child sat in the seats that corresponded to the stolen tickets. The adults were identified as Mark Green and Koetta Bolding. They indicated that they received the tickets from Koetta Bolding's brother, Chano Bolding.
 {¶ 4} Upon talking with Chano Bolding and his girlfriend, Kristina Kohen, the police officers turned their investigation to Moore. Kohen informed the officers where Moore lived, and several officers went to Moore's residence.
 {¶ 5} When the officers arrived at Moore's residence, Moore was not home. However, his wife, Jennifer Moore, was at the residence. Jennifer Moore permitted the officers to enter the home. While inside, the officers observed several items that appeared to be stolen. *Page 3 
 {¶ 6} Based on the officers' observations at Moore's residence, they obtained a search warrant for the house. Inside Moore's home, the officers found flat screen televisions, digital cameras, jewelry boxes, and a variety of jewelry.
 {¶ 7} In February 2007, Moore agreed to talk with the police regarding the burglaries. Moore and his attorney met with officers from various jurisdictions at the Avon Lake Police Department. After waiving hisMiranda rights, Moore provided a detailed statement to the officers. Moore admitted that he committed multiple burglaries over several years. He stated that he committed the burglaries with Chano Bolding and/or Donald Ferguson. He explained how he entered residences, what items he took, and the times of day he would execute the burglaries. In addition to his statement at the Avon Lake Police Department, Moore rode with officers from several jurisdictions and pointed out specific houses that he had burglarized.
 {¶ 8} Moore was indicted on one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1) and a first-degree felony, and 105 counts of burglary, in violation of R.C. 2911.12(A)(2) and second-degree felonies. The burglary charges each pertained to an individual residence in one of the five counties. All the crimes were tried in Lake County, because they were part of the same course of conduct. Moore pled not guilty to all the charges against him.
 {¶ 9} In May 2007, Moore filed a motion to suppress all the evidence obtained as a result of various police officers questioning him. Moore argued that his waiver of his Miranda rights was not voluntary due to the coercive actions and false promises of the questioning officers. The state filed a response in opposition to Moore's motion. *Page 4 
The trial court held a hearing on Moore's motion. Thereafter, the trial court denied Moore's motion to suppress.
 {¶ 10} A jury trial was held. The state presented numerous witnesses, including victims of the burglaries, police officers who investigated the offenses, and Donald Ferguson, who assisted Moore with some of the burglaries. Ferguson testified to the general plan Moore would use when burglarizing homes, which included taking a pillow case from the master bedroom for use in carrying the stolen items.
 {¶ 11} Following the state's case-in-chief, Moore moved for acquittal pursuant to Crim. R. 29 on approximately 70 of the counts against him, including Count 21. The trial court granted Moore's motion for acquittal in regard to Count 104, but denied his motion in regard to the remaining counts.
 {¶ 12} Moore presented three witnesses. Two individuals from Suntan Supply, Moore's former employer, testified as alibi witnesses. They testified that Moore was working, sometimes out of town, on days that some of the burglaries were committed. In addition, Moore's former attorney testified regarding Moore's initial interview with the police. Following his presentation of evidence, Moore renewed his Crim. R. 29 motion for acquittal. The trial court granted Moore's renewed motion for acquittal in regard to Count 70, but denied the motion in regard to all other counts.
 {¶ 13} The jury found Moore guilty of Count one, engaging in a pattern of corrupt activity. In regard to the burglary counts, the jury found Moore guilty of Counts two through 59, Counts 61 through 69, Counts 71 through 77, Counts 79 through 95, Counts 97 through 103, and Counts 105 and 106. The jury found Moore not guilty of Counts 60, 78, and 96. *Page 5 
 {¶ 14} The trial court sentenced Moore to a ten-year prison term for his conviction for Count one, engaging in a pattern of corrupt activity. In addition, in regard to the burglary convictions, the trial court sentenced Moore as follows:
 {¶ 15} "Counts 2 through 6, three (3) years for each count, to be served concurrent with each other, and Count 2 to be served consecutive to Count 1;
 {¶ 16} "Counts 7 through 17, three (3) years for each count, to be served concurrent with each other, and Count 7 to be served consecutive to Counts 1 and 2;
 {¶ 17} "Counts 18 through 56, five (5) years for each count, to be served concurrent with each other, and Count 18 to be served consecutive to Counts 1, 2 and 7;
 {¶ 18} "Counts 57 through 59, and Counts 61 through 67, three (3) years for each count, to be served concurrent with each other, and Count 57 to be served consecutive to Counts 1, 2, 7, and 18;
 {¶ 19} "Counts 68 and 69, Counts 71 through 77, and Counts 79 and 80, four (4) years for each count, to be served concurrent with each other, and Count 68 to be served consecutive to Counts 1, 2, 7, 18 and 57;
 {¶ 20} "Counts 81 through 93, four (4) years for each count, to be served concurrent with each other, and Count 81 to be served consecutive to Counts 1, 2, 7, 18, 57 and 68;
 {¶ 21} "Counts 94 and 95, and Counts 97 through 103, three (3) years for each count, to be served concurrent with each other, and Count 94 to be served consecutive to Counts 1, 2, 7, 18, 57, 68 and 81; *Page 6 
 {¶ 22} "Count 105, three (3) years for each count, to be served concurrent with each other, and consecutive to Counts 1, 2, 7, 18, 57, 68, 81 and 94;
 {¶ 23} "Count 106, three (3) years for each count, to be served concurrent with each other, and consecutive to Counts 1, 2, 7, 18, 57, 68, 81, 94 and 105, for a total prison term of forty-one (41) years imprisonment."
 {¶ 24} Moore raises four assignments of error. We will address these assigned errors out of numerical order. His first assignment of error is:
 {¶ 25} "Counsel for appellant was ineffective in failing to file a motion to suppress the items seized in the search warrant and all subsequent confessions as fruit of a poisonous tree."
 {¶ 26} Moore contends his trial counsel should have filed a motion to suppress due to his assertion that the police officers used coercion to obtain Jennifer Moore's consent to search his home.
 {¶ 27} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth inStrickland v. Washington (1984), 466 U.S. 668. Moreover, "`a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness *Page 7 
claim on the ground of lack of sufficient prejudice, * * * that course should be followed.'" Id. at 143, quoting Strickland, 466 U.S. at 697.
 {¶ 28} Moore's trial counsel filed a motion to suppress his statements to the police on the ground that his Miranda rights were violated. The fact that trial counsel filed a motion to suppress, albeit on a different ground, suggests that trial counsel investigated the circumstances involving the officers' investigation and was aware of using a motion to suppress as a trial tactic. This fact weighs in favor of a finding that trial counsels' performance did not fall below an objective standard of reasonable representation.
 {¶ 29} Further, in his brief, Moore states "[t]he exact statements and conversations that led to appellant's wife granting entry to her home, showing the officer's items of interest and the signing of the consent form are still to this date unexplored and unknown." Moore admits that there is nothing in the record to show what the underlying circumstances were when the officers obtained consent from Moore's wife.
 {¶ 30} This court has consistently held that "`an appellate court's review is strictly limited to the record that was before the trial court, no more and no less.'" Condron v. Willoughby Hills, 11th Dist. No. 2007-L-105, 2007-Ohio-5208, at ¶ 38. (Citation omitted.) See, also,State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus. Further, "[i]f appellant cannot demonstrate the claimed error then we presume the regularity of the trial court proceedings and affirm the judgment." State v. Davis (Dec. 4, 1998), 11th Dist. No. 97-P-0111, 1998 Ohio App. LEXIS 5810, at *2, citing Rose Chevrolet, Inc. v.Adams (1988), 36 Ohio St.3d 17, 19; Knapp v. Edwards Laboratories *Page 8 
(1980), 61 Ohio St.2d 197, 199; Bucary v. Rothrock (July 13, 1990), 11th Dist. No. 89-L-14-046, 1990 Ohio App. LEXIS 2854, at *2-3.
 {¶ 31} Based on the state of the record before this court, Moore is unable to demonstrate his trial counsels' performance fell below an objective level of reasonable representation. Likewise, Moore is unable to demonstrate that he was prejudiced by trial counsels' allegedly deficient performance.
 {¶ 32} Moore's first assignment of error is without merit.
 {¶ 33} Moore's fourth assignment of error is:
 {¶ 34} "Trial counsel were ineffective in failing to object to hearsay testimony with regards to Count 21."
 {¶ 35} Count 21 concerned a burglary that occurred at 79 Melrose Drive in Painesville, Ohio.
 {¶ 36} John Murphy testified for the state. Murphy is the homeowner of 74 Melrose Drive in Painesville, Ohio. Also, he was the victim of the burglary charged in Count 20. The following colloquy occurred during Murphy's testimony on direct examination:
 {¶ 37} "Q. Okay. We'll get to that in a moment. As to the damage of the house and the condition of the house I want to show you a series of photographs marked State's exhibits 20B through H, ask you if you could look through those and see if you recognize the scenes depicted in those photographs?
 {¶ 38} "* * *
 {¶ 39} "A. Right. And I never saw the picture of the guitar that was left in my backyard before. *Page 9 
 {¶ 40} "Q. That's 24H. [sic] Did you hear there was a guitar in your backyard?
 {¶ 41} "A. Yes, I was told that belonged to a neighbor across the street."
 {¶ 42} We note that the state did not move for exhibit 20H, the picture of the guitar, to be admitted. Thus, it is not in evidence and was not presented to the jury.
 {¶ 43} Murphy's statement that he was told there was a guitar in his backyard that belonged to a neighbor was hearsay. Evid. R. 801(C). It was an out-of-court statement offered to prove the truth of the matter asserted. Id.
 {¶ 44} However, Moore has not demonstrated how he was prejudiced by this statement. This is because Detective Scott Stranahan of the Lake County Sheriff's Office testified that Moore admitted to him during the ride-along that Donald Ferguson had taken an electric guitar from 79 Melrose Drive during the burglary.
 {¶ 45} Further, Detective Stranahan testified that an electric guitar was found in the backyard of Murphy's residence at 74 Melrose Drive. Moore argues that Detective Stranahan did not have first-hand knowledge regarding the guitar being found on Murphy's property. Detective Stranahan testified a guitar "was actually found in the backyard" of Murphy's residence. He did not say if he found the guitar or if it was found by someone else. Since the record does not conclusively demonstrate that Detective Stranahan's testimony was based on hearsay, we cannot conclude trial counsel were ineffective for failing to object to it. We note that Murphy testified he gave a report to Detective Stranahan, suggesting that Detective Stranahan may have been to Murphy's residence on the night in question and personally viewed the guitar in his backyard.
 {¶ 46} Moreover, had a timely objection been made, the state would have had the opportunity to further demonstrate the existence of the guitar on Murphy's property *Page 10 
through other evidence, such as testimony from the officer who took the picture identified as state's exhibit 20H. See State v. Mansfield, 11th Dist. No. 2007-L-173, 2008-Ohio-3989, at ¶ 53.
 {¶ 47} Since there was other admissible evidence regarding the guitar on Murphy's property, Moore has not demonstrated that he was prejudiced by his trial counsels' failure to object to the hearsay statement.
 {¶ 48} In his second assignment of error, Moore argues that his trial counsel were ineffective for failing to raise an argument pursuant toCrawford v. Washington (2004), 541 U.S. 36. The Crawford decision concerns the admission of hearsay statements in a criminal trial and whether those statements violated the defendant's rights pursuant to the Confrontation Clause of the Sixth Amendment to the United States Constitution. State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482, at ¶ 16, quoting Crawford v. Washington, 541 U.S. at 68. The Confrontation Clause provides additional protection from testimonial hearsay statements. Id. Since this argument is related to the hearsay statement involving the guitar, we will address it at this point.
 {¶ 49} The Crawford Court declined to adopt a formal definition of "testimonial." State v. Stahl, 2006-Ohio-5482, at ¶ 19. However, the Supreme Court of Ohio noted that the Crawford Court did provide three examples of a testimonial statement, including: (1) in-court testimony or its functional equivalent, including affidavits; (2) statements contained in formal testimonial materials, including depositions and affidavits; and (3) statements made where an objective declarant would reasonably believe the statement would be available to be used at a subsequent trial. (Secondary citations omitted.) Id., quotingCrawford v. Washington, 541 U.S. at 51-52. *Page 11 
 {¶ 50} In this matter, there was a statement from an unknown declarant to Murphy that there was a guitar in his backyard. Thus, this statement does not meet the first two examples of testimonial statements. Further, there is nothing in the record to suggest that the unknown declarant reasonably believed the statement to Murphy would be used at a subsequent trial. The statement at issue in this matter was not testimonial.
 {¶ 51} Since the hearsay statement was not testimonial, Moore'sSixth Amendment rights were not violated. As such, we cannot say that Moore's trial counsels' performance was deficient for failing to raise a Confrontation Clause argument pursuant to Crawford v. Washington.
 {¶ 52} Moore's fourth assignment of error is without merit.
 {¶ 53} Moore's second assignment of error is:
 {¶ 54} "Trial counsel provided ineffective assistance for failure to raise Washington v. Crawford on Rule 29 and the trial court committed reversible error by failing to grant Rule 29 on Count 21."
 {¶ 55} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 56} Count 21 charged Moore with burglary, in violation of R.C. 2911.12(A)(2), which provides: *Page 12 
 {¶ 57} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 58} "* * *
 {¶ 59} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"
 {¶ 60} In this matter, Detective Stranahan testified that Moore admitted to him during the ride-along that Donald Ferguson had taken an electric guitar from 79 Melrose Drive during their burglary of that residence.
 {¶ 61} Moore argues that his conviction on Count 21 violates the corpus delicti rule, because the state did not offer any independent evidence aside from his conviction. We disagree.
 {¶ 62} The corpus delicti rule requires that evidence other than the defendant's confession be admitted prior to a defendant's confession being used in trial. See State v. Shannon, 11th Dist. No. 2002-L-207 2002-L-208, 2004-Ohio-1669, at ¶ 44. (Citation omitted.)
 {¶ 63} "[C]orpus delicti only requires `"some evidence outside of the confession that tends to prove some material element of the crime charged."' Finally, `in light of the myriad procedural protections granted defendants in modern criminal practice, however, "the corpusdelicti rule is supported by few practical or social policy considerations." (The Supreme Court of Ohio) has refused to apply it "with a dogmatic vengeance."'" Id. *Page 13 
quoting State v. Van Hook (1988), 39 Ohio St.3d 256, 261. (Emphasis sic. and secondary citations omitted.)
 {¶ 64} In this matter, Murphy testified that a guitar was found in his backyard. We concluded that Murphy's testimony regarding the guitar in his backyard was hearsay. However, his attorney did not object to the statement, and we have concluded that Moore was not prejudiced by the failure to object. Moreover, when conducting a sufficiency of the evidence analysis, this court is to look at the actual evidence admitted at trial, both admissible and inadmissible. See State v. Jeffries, 11th Dist. No. 2005-L-057, 2007-Ohio-3366, at ¶ 100, citing Lockhart v.Nelson (1988), 488 U.S. 33, 34. (State v. Jefferies overruled on other grounds in State v. Jefferies, 119 Ohio St.3d 265, 2008-Ohio-3865.) In addition, Detective Stranahan testified that a guitar was found on Murphy's property.
 {¶ 65} Further, other details provided by Moore of the burglaries at 74 and 79 Melrose Drive were confirmed by other witnesses. Moore stated that there was a "gold or light colored Lincoln" in the garage at 74 Melrose and that he stood on the car to unplug the garage door opener. Murphy testified that he had a light-colored Lincoln car parked in his garage on the night of the burglaries. Also, Moore stated that he committed the burglaries with Donald Ferguson. He stated that they went to a local bar prior to committing the burglaries, because Ferguson did not like to burglarize homes in a sober condition. Although Ferguson could not remember the exact details, Ferguson testified that they went to a bar in the Mentor/Painesville area, where he consumed shots of alcohol, prior to burglarizing homes in Lake County. *Page 14 
 {¶ 66} The state presented evidence that, when viewed in a light most favorable to the state, was sufficient for a trier-of-fact to conclude that Moore committed the offense of burglary at 79 Melrose Drive beyond a reasonable doubt.
 {¶ 67} Moore's second assignment of error is without merit.
 {¶ 68} Moore's third assignment of error is:
 {¶ 69} "The conviction by the jury with regards to Count 21 of the indictment was against the manifest weight of the evidence."
 {¶ 70} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 71} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 72} In our previous analysis, we have addressed the evidence presented by the state in support of Moore's conviction on Count 21, including Moore's statement to Detective Stranahan that he burglarized the home at 79 Melrose Drive.
 {¶ 73} There was no alibi testimony presented regarding Count 21. The evidence presented by the state indicates the burglary associated with Count 21 occurred in September 2005. Moore's alibi witnesses testified that he worked at Suntan Supply from the fall of 2006 through the spring of 2007. *Page 15 
 {¶ 74} Finally, we note the jury found Moore not guilty on three of the burglary counts. This suggests the jury individually considered the evidence presented in regard to each count. Further, "[t]his demonstrates the jury's ability to be impartial and, if they were not convinced by the state's evidence [on Count 21], to enter a not guilty verdict." State v. Cameron, 11th Dist. No. 2007-L-004, 2007-Ohio-6935, at ¶ 58.
 {¶ 75} The jury did not lose its way or create a manifest miscarriage of justice by finding Moore guilty of Count 21.
 {¶ 76} Moore's third assignment of error is without merit.
 {¶ 77} The judgment of the trial court is affirmed.
MARY JANE TRAPP, J., concurs,
 COLLEEN MARY O'TOOLE, J., concurs in judgment only. *Page 1